IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-01296-RBJ

DAVID SHAEFFER, M.D., an individual; AMBER REISS-HOLT, M.D., an individual; and
THE PAGOSA MEDICAL GROUP, LLC, a Colorado limited liability company,

      Plaintiff,

v.

RYAN WALLACE, an individual,

      Defendant.

---

## ORDER to REMAND

---

This case was originally filed in the District Court of Archuleta County, Colorado (Case No. 2018CV30022). Defendant Ryan Wallace removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. §1332(a). ECF No. 1. The case is before the Court on plaintiffs' motion to remand. ECF No. 18. For the reasons stated herein, the motion to remand is GRANTED.

## BACKGROUND

Plaintiffs, Colorado citizens, filed an action in Colorado state court on March 12, 2018 against Defendant Ryan Wallace, alleging breach of fiduciary duty, fraud and conversion in a partnership dispute. On May 25, 2018, defendant removed the case to this court pursuant to 28 U.S.C. §§ 1332(a) & 1441(a), alleging that diversity of citizenship exists because contrary to plaintiffs' allegations, defendant is not a citizen of Colorado. Instead, defendant "claims St.

Thomas in the U.S. Virgin Islands as his place of residency," and when in the continental United States, "spends the majority of his time in Kansas." ECF No. 1 at ¶ 15.

Plaintiffs filed a motion to remand, ECF No. 18, alleging that defendant was indeed domiciled in Pagosa Springs, CO throughout his relationship with plaintiffs, and that he had not changed his domicile prior to the filing of this lawsuit. ECF No. 18 at 3. Dr. Shaeffer filed an affidavit with this motion describing his relationship with defendant in Colorado, and statements defendant made to him about his intentions to remain in Colorado. ECF No 18-2. Defendant filed a response opposing the petition for remand, ECF No. 19, and attached a declaration stating that though he purchased property in Pagosa Springs in 2017 and lived there, he never intended to stay there. He considers the U.S. Virgin Islands his primary and permanent home, and even if the Court finds he established a domicile in Colorado, his domicile had changed back to the U.S. Virgin Islands by the time the case was removed. ECF No. 19 at 2. Plaintiffs filed a reply, ECF No. 20, doubling down on defendant's ties to Colorado. Because plaintiffs and defendant painted such different pictures of the life Mr. Wallace established in Colorado in 2017, or didn't, I ordered an evidentiary hearing to assess credibility. On December 14, 2018, both Mr. Shaeffer and Mr. Wallace testified before the Court in this evidentiary hearing. This motion has been fully briefed and is ripe for review.

## STANDARD OF REVIEW

Federal courts have original jurisdiction over all civil actions between citizens of different states and in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Diversity exists when no plaintiff and no defendant are citizens of the same state. *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). The Territory of the Virgin Islands, a United States Territory, qualifies as a "state" for purposes of the diversity jurisdiction

statute.  *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996) (citing 28 U.S.C. § 1332(d)).  A case

is properly removed to federal court on the basis of diversity jurisdiction if the jurisdictional

requirements exist at the time of removal.  *See Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484,

1488 (10th Cir. 1991) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)) ("[t]he propriety

of removal is judged on the complaint as it stands at the time of the removal").  The party

invoking diversity jurisdiction bears the burden of proving its existence by a preponderance of

the evidence.  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

In the case of natural persons, state citizenship for purposes of 28 U.S.C. § 1332 is the

equivalent of domicile.  *Wallace v. HealthOne*, 79 F. Supp. 2d 1230, 1233 (D. Colo. 2000).

Domicile "is the combination of physical presence in a location and an intent to remain there

indefinitely."  *Martinez v. Martinez*, 62 F. App'x 309, 313 (10th Cir. 2003) (citing *Mississippi

Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).  "Mere mental fixing of

citizenship is not sufficient.  What is in another man's mind must be determined by what he does

as well as by what he says."  *Id.*  In determining a person's domicile for diversity-jurisdiction

purposes, a district court should consider the totality of the circumstances:

> It's an all-things-considered approach, and any number of factors might shed light
> on the subject in any given case.  *See, e.g.,* Wright et al., *supra,* § 3612, at 536–41
> (listing "the party's current residence; voter registration and voting practices; situs
> of personal and real property; location of brokerage and bank accounts;
> membership in unions, fraternal organizations, churches, clubs, and other
> associations; place of employment or business; driver license and automobile
> registration; payment of taxes; as well as several other aspects of human life and
> activity")

*Middleton*, 749 F.3d at 1201.

Once a person establishes a domicile, a presumption arises that his domicile remains the

same.  *Middleton*, 749 F.3d at 1200 (citing *Mitchell v. United States*, 88 U.S. 350, 353 (1874)).

"But that presumption is a rebuttable one, and the party seeking to rebut it bears only a burden of

production – not persuasion.  In other words, the party seeking to rebut the presumption need only *produce* sufficient evidence suggesting that domicile has changed; the party need not *prove* it." *Middleton*, 749 F.3d at 1200 (emphasis in the original).

## ANALYSIS

### A.  Mr. Wallace's Domicile Upon Moving to Colorado in 2017.

It is undisputed that defendant was domiciled in the U.S. Virgin Islands prior to 2017. The first issue is whether defendant changed his domicile to Colorado in 2017.  Mr. Wallace was born in Kansas, and moved to the U.S. Virgin Islands in 2011.  He owns and operates a business in the U.S. Virgin Islands and has identified the U.S. Virgin Islands as his state of residency in IRS filings since 2011.  ECF No. 19-1 at ¶5.

In March 2017, Mr. Wallace purchased a house in Pagosa Springs.  ECF No. 19-1 at ¶11. According to Mr. Wallace, he purchased this property as an investment property that he could rent out to others and use as a vacation home for himself and friends.  ECF 19-1 at ¶11.  Mr. Wallace also opened a savings account in Pagosa Springs, which he has in addition to accounts with banks in Texas, Kansas and the U.S. Virgin Islands.  ECF No. 13.  Mr. Wallace met Dr. Shaeffer in May 2017 when his primary care physician referred him to Dr. Shaeffer for a medical procedure.  ECF No. 20-1.  Mr. Wallace explained that he had a background in medical practice management, which peaked Dr. Shaeffer's interest as he was looking to establish an independent medical practice in Pagosa Springs with his wife.  ECF No. 18-2.

Dr. Shaeffer testified that Mr. Wallace explained to him that he came to Pagosa Springs because he was familiar with the area, had friends there and wanted to live in the mountains.  Dr. Shaeffer further testified that in his dealings with Mr. Wallace in setting up the business partnership, it was his understanding that Mr. Wallace intended to make Pagosa Springs his

home and stay there.  Mr. Wallace's communications to Dr. Shaeffer in creating this business partnership shed light on his intentions to remain in Colorado.  Mr. Wallace was to serve as manager of Dr. Shaeffer and Dr. Reiss-Holt's medical practice, the Pagosa Medical Group, LLC (PMG).  At the hearing, Dr. Shaeffer and Mr. Wallace agreed that the plan was for Mr. Wallace to serve as manager initially without compensation, and then to discuss compensation after PMG got off the ground.  Mr. Wallace invested between $150,000 (according to Dr. Shaeffer) and $200,000 (according to Mr. Wallace) of his own money in Gianna, an LLC formed by plaintiffs and Mr. Wallace together.  Gianna then purchased the property on which PMG operated on. PMG opened on August 21, 2017.  Mr. Wallace testified that he made additional personal investments in the amount of $50,000 in the Pagosa Medical Group during December 2017.  Dr. Shaeffer testified that Mr. Wallace managed PMG full time, and split his time between the office and his home in Pagosa Springs, located a few miles from the office where he finished up billing work.  Mr. Wallace testified that it was his intention to be physically present in Pagosa Springs to get PMG off the ground, though he disagreed that he was physically present there every weekday.  Part of Mr. Wallace's agreement with plaintiffs was that he would go back to the Virgin Islands from time to time to tend to the business he continued to own there.  When he went back to the Virgin Islands, he stayed with friends or on his boat.

To me, Mr. Wallace's engagement with Dr. Shaeffer and Dr. Reiss-Holt in starting PMG and his significant personal investment into the property are highly probative of his intent to remain in Colorado indefinitely.  In his testimony, Mr. Wallace did not contest Dr. Shaeffer's description of their business partnership as one they had planned to continue for years.  In the pleadings and at the evidentiary hearing, Mr. Wallace described his employment with PMG as temporary consulting work as was common in his line of work.  However, Dr. Shaeffer testified

that Mr. Wallace did not communicate that he intended his employment to be short term, and that from their business dealings, he did not get the impression that Mr. Wallace was intending to leave Colorado.  Mr. Wallace's personal investment in the business supports such a conclusion. The planned compensation structure, in which Mr. Wallace agreed not to take a salary at first but to instead negotiate the salary once the business was running, also suggests long-term employment and an involved business partnership.

In his pleadings, Mr. Wallace states that he began searching for new business opportunities in early 2018 when he realized "that a long-term relationship with Plaintiffs was both undesirable and unlikely," implicitly acknowledging that a long-term relationship with plaintiffs was contemplated originally.  ECF No. 19 at 7.  He also testified that the news of a future grandchild in Kansas and his desire to be involved in this grandchild's life completely changed his plans of remaining in Colorado with PMG.  This statement lends support to Dr. Shaeffer's testimony that they intended the business partnership to be long-term with Mr. Wallace being physically present in Pagosa Springs as the manager.  If the parties had planned for Mr. Wallace to be involved only in a temporary and remote way, then it is hard to understand how the joyful news of a grandchild in Kansas would significantly change these plans.

Mr. Wallace also obtained a Colorado driver license and registered to vote in Colorado. Mr. Wallace testified that he obtained this driver license because he needed an identification card for travel.  He had never obtained a driver license from the U.S. Virgin Islands because he had heard anecdotally that driver licenses from the U.S. Virgin Islands were sometimes not accepted at airports and because he believed it to be a burdensome process.  Mr. Wallace also purchased and registered a vehicle in Colorado.  I infer that being able to lawfully operate that vehicle while living in Colorado was also a motivating factor in obtaining a Colorado driver license.

In regard to his Colorado voter registration, Mr. Wallace testified that any voter registration he filled out must have been unintentional when obtaining a driver license, as the two documents shared the same date.[1] He was adamant that he had no intention of voting, and that he had not voted in any election since he last had an opportunity to vote for Bill Clinton. This explanation is credible to me, but the fact remains that Mr. Wallace represented himself as a resident of Colorado to state agencies in Colorado.[2]

There are a few other, less probative, indicators that, as part of the "all things considered" approach, contribute to the Court's finding regarding Mr. Wallace's domicile. Mr. Wallace hosted friends and family often at his home in Pagosa Springs. He had adopted a dog there, had a primary care doctor there and had a non-emergency medical procedure performed there. He didn't maintain an apartment or other residence in the U.S. Virgin Islands during this time. Considering all these factors together, I find that Mr. Wallace established a domicile in Pagosa Springs, Colorado in 2017.

**B. Mr. Wallace's Domicile After His Resignation from PMG.**

Mr. Wallace argues that even if he had established a domicile in Colorado, it had subsequently changed to the U.S. Virgin Islands once he resigned from PMG in February 2018. ECF No. 19 at 8-9. Because the propriety of removal is judged at the time of removal, the question is whether Mr. Wallace had changed his domicile by May 25, 2018. I find that he did not.

---

[1] All Colorado driver license offices provide voter registration services. *See, e.g.*, *New to Colorado*, Colorado Division of Motor Vehicles, https://www.colorado.gov/pacific/dmv/new-colorado-0.

[2] Obtaining a Colorado driver license and registering to vote in Colorado both require demonstrating Colorado residency. *See* Colo. Rev. Stat. § 42-2-107(d) ("The department may not issue a driver or minor driver license to any person who is not a resident of the state of Colorado."); Colo. Rev. Stat. §1-2-101(1)(b) (requiring residency in Colorado to register to vote).

After PMG opened in August 2017, issues began to arise between Mr. Wallace and plaintiffs. In November 2017, Mr. Wallace resigned his managerial duties but continued to provide other services for PMG. He resigned from PMG altogether in late February 2018. ECF No. 19-1 at 5. At the hearing, Mr. Wallace testified that after his resignation, he left for Thailand to explore other business opportunities. After extended travels, he returned to Pagosa Springs to prepare his house for sale. He continues to use it as an investment property for renters. ECF No. 19-1 at ¶18. Plaintiffs were unable to serve Wallace in Colorado when they filed their Complaint, and had to move for substituted service upon his daughter and upon his assistant in Kansas. ECF No. 19 at 9. Mr. Wallace testified that after coming back from Thailand he has split his time between the U.S. Virgin Islands and Kansas with his daughter.

Though Mr. Wallace states that the U.S. Virgin Islands is his current domicile, there is no evidence that, as of May 25, 2018, Mr. Wallace took any affirmative steps to establish a domicile in the U.S. Virgin Islands again. He has a business and a boat in the U.S. Virgin Islands, but he had these things before leaving for Colorado in the first place. He may have returned to the U.S. Virgin Islands after traveling in Thailand, but it is unclear how long he has stayed there or how much time he spent there. There isn't evidence that he has done other things to indicate establishing a domicile such as purchasing a home or taking on employment. This inference is supported by his testimony that his daughter's presence in Kansas was a motivating factor in leaving Colorado. Kansas is a good deal closer to Colorado than to the U.S. Virgin Islands. Because an established domicile continues until a new one is established, and there is insufficient evidence upon which to conclude that Mr. Wallace established a new domicile by May 25, 2018, I find that Mr. Wallace was domiciled in Colorado at the time of removal of this case. Mr.

Wallace was a Colorado citizen at that time, and this Court does not have jurisdiction pursuant to 28 U.S.C. §1332(a).

## ORDER

For the foregoing reasons, plaintiff's motion to remand, ECF No. 18, is GRANTED, and the case is remanded to the District Court of Archuleta County, Colorado for further proceedings.

DATED this 21st day of December, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge